UNITED STATES DISTRICT COURT    ᴿ ᵢ ᵢ ᵢᴜ
DISTRICT OF NEW MEXICO - SANTA FE DIVISION

DAVID BAGLEY, RAMONA BAGLEY
AND ANGEL FIRE WATER CO.

V

PAUL COSTA, THE SPENCER GROUP
 INTERNATIONAL,  JACK FERM and the LAW
OFFICE OF JACK FERM

CIVIL ACTION NO.

SECTION

MAG.

CLERK-SANTA FE

CIV          ГВ  RHS

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs bring this action against Defendants for their violations of the Racketeer

Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, *et seq* and for other

causes of action as set forth herein.

### 1. JURISDICTION

a.    This Honorable Court has jurisdiction over this civil action pursuant to 18

U.S.C. §§1962(a), (b), (c) and (d), 1964( c), and 28 U.S.C. §§1331 and 1337.   This is

a civil

action arising under 18 U.S.C. §§1961-1968, §901(a) of Title IX of the Organized Crime

Control Act of 1970, as amended, otherwise known as the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), and in particular, under 18 U.S.C. §1964 and other

causes of action as set forth hereafter.

### 2. VENUE

a.    Venue lies with this district pursuant to 18 U.S.C. §1965 and 28 U.S.C.

§1391. Defendants at relevant times conducted substantial business in this district. The

1



violations occurred in this district. Defendants transact or have transacted their affairs in this district, and their concerted conduct, upon which this action is founded, was directed at and intended to injure Plaintiffs in this district.

b.      Defendants, either on their own or through their agents, at the time of the commission of the acts alleged hereunder, were found in, and/or transacted business in the State of Louisiana, and the cause of action which is the object of this Complaint arises out of business transactions in the State of Louisiana, including specific acts within this district.

c.      Defendants, either on their own or through their agents, conspired to commit within the State of New Mexico the wrongful acts alleged in this Complaint and/or committed or participated in the commission of those acts within or without the State of New Mexico, purposefully directing their wrongful acts toward the forum of New Mexico, causing in New Mexico, directly or indirectly, the violations of RICO and the other causes of action set forth herein and Plaintiffs' resultant injuries.

d.      Defendants' racketeering activities were conducted through a pattern of acts and transactions which occurred and/or had their effect within the State of New Mexico, in this district.

e.      In connection with the acts and conduct described herein, the Defendants directly or indirectly used the means of interstate commerce, including the mails and telephones.

f.      All contracts, representations by defendants, and agreements between David Bagley, individually and on behalf of Angel Fire, LLC, and Paul Costa, individually and on behalf of the Spencer Group International Group, were negotiated and agreed

2

to and executed in the State of New Mexico, and stipulates that the laws of the State of

New Mexico will apply where state law applies.

### 3.   PARTIES

a.      Petitioner David Bagley, 19 Peralta, Angel Fire, New Mexico, 87710,  is a

person of the full age of majority and domiciled within the jurisdictional territory of this

Court.  Petitioner is the managing partner of Angel Fire Water Co., LLC, (hereinafter,

"AFW") a Nevada company (registered with the Secretary of State of Nevada)

authorized to do and doing business within the jurisdictional territory of this Court;

b.      Petitioner Angel Fire Water Co., LLC, 28 Fria Court, Angel Fire, New

Mexico, 87710, is a Nevada LLC, authorized to do and doing business within the

jurisdictional territory of this Court by the New Mexico Secretary of State;   AFW

processes, bottles and distributes wholesale drinking water that has undergone AFW's

and David Bagley's proprietary and patented treatment;

c.      Defendant Paul Costa, 214 Main Street, # 273, El Segundo, California,  is

a person of the full age of majority and, upon information and belief, domiciled in the

State of  California;   Paul Costa allegedly owns the Spencer Group International;

d.      Defendant The Spencer Group International, 575 Anton Boulevard, Suite

300, Costa Mesa, California, 92626, is a foreign corporation authorized to do and doing

business within the jurisdictional territory of this court, and is allegedly owned and

operated by defendant Paul Costa;

e.      Defendant Jack Ferm is an attorney who, upon information and belief, is

licensed to practice law in the State of California and Nevada and who, at all pertinent

times, did business within the jurisdictional territory of this Court;

3

f.      Defendant Law Office of Jack Ferm, upon information and belief, is a foreign corporation authorized to do and doing business within the jurisdictional territory of this Court.

## 4.  FACTS

1.      The Enterprise  (defendants Paul Costa, The Spencer Group International, the Law Office of Jack Ferm and Jack Ferm) have engaged in a "pattern of racketeering activity," as defined in §1961 of RICO, by committing and/or conspiring to commit or aiding and abetting transaction(s)  with at least two such acts of racketeering activity, as described herein, within the past ten years. Each act of racketeering activity was related, had the same purpose, involved the same or similar participants and methods of commission, and had similar results.

2.      These predicate acts are related in that they had and continue to have the same purpose (to carry out the scheme described herein); result (to obtain money from the same victims and targets of the scheme - David Bagley, Ramona Bagley and Angel Fire Water Co., LLC); victims (Plaintiffs); method of commission (the scheme described herein); and are otherwise interrelated by distinguishing characteristics and are not isolated events, because they were carried out for the same purpose over a period of at least three (3)  years.

3.      Predicate acts were committed in the same manner, and they constituted the Enterprise's (the Association in Fact of Paul Costa, The Spencer Group International, Jack Ferm and the Jack Ferm Law Office) "normal" way of doing business with regard the fraudulent representations of raising capital through

4

investments, "hedge funds" and other financial services.   The defendants Paul

Costa,  The Spencer Group International,  Jack Ferm and the Law Office of Jack

Ferm were and are also engaged in other financial activities separate and apart

from the scheme detailed herein, and their unlawful actions which constitute the

predicate acts giving rise to this RICO claim are within their "normal" and

"regular" way of doing business.   The Association in Fact of Paul Costa, TSGI,

Jack Ferm and the Law Office of Jack Ferm has no other business for the

purposes of this complaint, other than executing their fraudulent scheme upon

plaintiffs.

4.      The related predicates amount to a continued criminal activity because they

        extended over a substantial period of time.

5.      The Enterprise's and defendants' courses of action entails a span of years,

        during which Defendants committed numerous and related predicate acts as part

        of their continuing scheme.   Also, the predicate acts are closely intertwined as

        far as actors, goals, nature, functioning and structure of the operations described

        herein in the persecution of Plaintiffs.

6.      The multiple acts and the continuity and relatedness of racketeering activity

        committed and/or conspired to or aided and abetted by Defendants, as

        described herein, were related to each other, amount to and pose a threat of

        continued racketeering activity, and, therefore, constitute a "pattern of

        racketeering activity" within the meaning of 18 U.S.C. §1961(5).

7.      RICO protects the legitimate "enterprises" of Angel Fire Water Co., LLC,  from

        defendants like Paul Costa, TSGI, Jack Ferm and the Law Office of Jack Ferm,

and the employees, officers, managers, and agents of TSGI and the Law Office of Jack Ferm who have committed the unlawful acts described in the "pattern of activity" detailed below.

8.    RICO also protects the legitimate "enterprises" of TSGI and the Law Office of Jack Ferm  from defendants like Paul Costa and Jack Ferm, and the employees, officers, managers, and agents of TSGI and the Law Office of Jack Ferm (hereinafter, "LOJF") who have committed the unlawful acts described in the "pattern of activity" detailed below.

9.    RICO protects the public from defendants who would unlawfully use an "enterprise" (legitimate or illegitimate) as a vehicle through which to commit the fraudulent scheme described herein.

10.   The persons of Costa and Ferm, and the employees, managers, officers and other agents of TSGI and the Law Office of Jack Ferm have used these legitimate enterprises to carry out their fraudulent scheme upon the victims as well as to victimize the corporate persons of Angel Fire Water Co., LLC, TSGI and the Law Office of Jack Ferm.

11.   The Association in Fact of Paul Costa, TSGI, Jack Ferm, LOJF and the employees, managers, officers and other agents of TSGI and LOJF and the corporate persons of TSGI and LOJF have used their Association in Fact to carry out their fraudulent scheme upon the victims. Their Association exists separate and apart from the racketeering activity. Each member acted as a part of a unit, and the whole unit was necessary to carry out the scheme.

12.   The pattern of racketeering activity herein, i.e., the fraudulent representations

that the defendants would

> (1) use the funds ($2.65 million dollars) solicited from petitioners to invest
> and raise capital for the Angel Fire Water Co., LLC project,
>
> (2) that defendants had the experience, track record and investors to raise
> capital and
>
> (3) other material and false misrepresentations in connection with the
> overall scheme,

were made through fraudulent misrepresentations via telephone, e-mail, U. S.
Mail, UPS and other means in interstate commerce.

13.   These fraudulent communications have been made by Paul Costa and Jack
Ferm individually and as owner/operators of TSGI and LOJF, by the corporate
persons of TSGI and LOJF, and by the employees, managers, officers and other
agents of TSGI and LOJF  in their capacity as managers, officers and agents of
TSGI and LOJF.

14.   These communications, the conduct of the schemes and the enterprise
themselves have all been continuing over at least a three (3) year period, and
defendants have acted as a unit in the perpetuation of the scheme and
accomplishment of it's goals.

15.   Jack Ferm and the LOJF has as their legitimate business legal services and,
upon information and belief, financial and business services, in interstate
commerce.

16.   Allegedly, TSGI  has as it's legitimate business the sale of financial and business
services in interstate commerce. Therefore, there is a threat that the behavior

described   herein could continue with the same or different personnel in other states and jurisdictions.

17.    Technically, there are three "enterprises": TSGI, LOJF and the Association in Fact that is comprised of Paul Costa, TSGI, Jack Ferm, LOJF and the employees, officers, agents of TSGI and LOJF.

18.    With TSGI and LOJF as enterprises, the persons existing separate and distinct from them are Paul Costa, Jack Ferm and the employees, officers and agents of TSGI and LOJF.   The enterprises exist separate and apart form the pattern of racketeering activity.

19.    With the Association in Fact as the enterprise (Paul Costa, TSGI, Jack Ferm, the LOJF and the officers, members, employees and managers of TSGI and LOJF) the enterprise still exist separate and apart from the pattern of activity.   Each member of the Association has his, her or it's legitimate business outside of the activities of the Association (the activities that target plaintiffs).

20.    All plaintiffs and victims have been injured directly and indirectly by the fraudulent schemes described herein.

21.    All defendants and enterprises, at various times, participated in the conspiracy by performing tasks (letters, telephone conversations, sending notices, e-mails, deliveries interstate and statements) designed to further the fraudulent scheme based on fraudulent misrepresentations.

22.    The wire and mail fraud (Title 18 U.S.C. Sections 1341 and 1343) violations alleged are indictable offenses:

a.       the scheme involved the fraudulent representation that Costa, TSGI, Ferm and LOJF were qualified to, able to and had the necessary experience, skill, track record, contacts and investors to raise capital for the Angel Fire Water project;

b.       the scheme involved the fraudulent representation that the funds provided by petitioners to defendants, $2,650,000.00, would be invested to raise capital for the Angel Fire project, would be used to create a "hedge" fund for the Angel Fire project, and that the victims would receive "dividends on the investment" out of the "40% return on investment" by defendants;

c.       the scheme involved the fraudulent misrepresentation that the "dividend" checks received by the victims were from money made on investments when, in fact, the "dividends" received were the victims' own money sent to defendants for creation of the "hedge" fund and for investments;

d.       All defendants, Costa, TSGI, Jack Ferm and LOJF and the Association in Fact used the mails, telephone, e-mail, UPS and other methods of interstate communication in furtherance of the scheme;

e.       defendants had specific intent to defraud by devising, participating in and abetting the scheme.

23.     Plaintiffs relied on the false and fraudulent misrepresentations made by all defendants in the furtherance of their schemes, relied upon the communications received by mail, wire, e-mail and other means in

9

interstate commerce.

24.   Some of these communications are detailed below.

   I.   **DEFENDANTS ARE GUILTY OF CIVIL VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

**The Rico Enterprise**

25.   Plaintiffs are "person(s)" within the meaning of 18 U.S.C. §1964( c ).

26.   At all times relevant hereto, Plaintiffs and the Defendants were "persons" within the meaning of 18 U.S.C. §1961(3).

27.   An enterprise need not be a specific legal entity but rather may be "any union or group of individuals associated in fact although not a legal entity."

28.   Defendants Paul Costa, TSGI, Jack Ferm and LOJF did knowingly, unlawfully, and intentionally combine, confederate, conspire and agree together with each other, and with coconspirators and others whose names are both known and unknown, to benefit and use proceeds from Defendants' pattern of racketeering activity for the furtherance of the legitimate aspects of the organizations, as stockholder dividends, employee and executive salaries, bonuses and operating expenses, to purchase and acquire goods and services, direct the proceeds of the racketeering activity into the general funds of these Defendant organizations, their employees, their executives, their stockholders, their subcontractors and others. This violation was in concert with totally fraudulent and corrupt and/or inept financial and business service companies and attorneys, constituting an

10

association in fact for the purpose of racketeering activity.

29.   The enterprise at issue in this case, for purposes of 18 U.S.C. §§1961(3)
and 1962(a), 1962(b), 1962( c ) and 1962(d), is an association-in-fact of all
Defendants referred to herein as "the Enterprise".   Additional wrongdoers
that may be part of the association-in-fact enterprise (sometimes referred
to herein as "Member" or "Members") include the individual Defendants
themselves, those employees and agents of the individual Defendants and
corporate persons and other non-defendant entities or co-conspirators that
participated in the fraudulent representations to the Plaintiffs, the public,
the courts, and various regulatory and enforcement agencies.

30.   While the defendants participated in the enterprise and were a part of it,
the Defendants also have an existence separate and distinct from the
Enterprise.

31.   Defendants maintained an interest in and control of the Enterprise and also
conducted or participated in the conduct of the Enterprise's affairs through
a pattern of racketeering activity.

32.   Defendants' control and participation in the Enterprise were necessary for
the successful operation of Defendants' scheme.

33.   The Enterprise had an ascertainable structure separate and apart from the
pattern of racketeering activity in which the Defendants engaged.

34.   The "Enterprises", the Association in Fact and their respective members
worked together to orchestrate the fraudulent schemes at issue and shared
profits and the fruits of its predicate acts. The association-in-fact enterprise

11

and the Costa/TSGI and Ferm/LOJF enterprises were comprised of formal, ongoing relationships which functioned as a continuing unit, pursuing a course of conduct, with a common or shared purpose and continuity of structure and personnel (including partners, associates and support staff). On information and belief, the fraudulent schemes herein are just an example of those in which the Costa/TSGI Enterprise, the Ferm/LOJF Enterprise and  the Association in Fact and all respective members of each participated as a decision-making, financing and functioning unit.

35.    Defendants and those employed by and/or associated with the  Enterprises and the Association in Fact, all of which engaged in interstate commerce, have conducted the affairs of the respective enterprises through a pattern of racketeering activity in violation of 18 U.S.C. §§1962(a), (b), and ( c), and have conspired to violate §1962(a) - (c) in violation of §1962(d) by designing, creating, engineering, implementing, marketing, promoting and/or selling bogus financial services based on fraudulent, false representations.

36.    All Defendants have violated 18 U.S.C. §1962(d), inasmuch as they knowingly, intentionally, and unlawfully, in aiding and abetting each other, conspired to conduct and participate, directly or indirectly, in the conduct of the affairs of the Costa/TSGI,  Ferm/LOJF and Association in Fact Enterprises, through the pattern of racketeering activity described herein.

### Defendants' Scheme

37.    For a substantial period of time, the Defendants knowingly; intentionally and directly participated in, or aided and abetted, counseled, commanded,

12

induced, procured or caused and conspired in the sale of fraudulent

financial and business services and that were sold based on the false and

fraudulent representation that the defendants were in the business of, had

the experience and track record in, and had the investors to invest and

raise money for the Angel Fire water project. Defendants represented that

they had investors to invest in the project, that they could use funds

provided by petitioners to raise money for the project through investments

and other means,  that they would pay dividends to petitioners from

dividends resulting from the investment of plaintiffs' money when, in fact,

none of these representations were true and the "dividends" paid were not

"dividends", but plaintiffs' own money.  These false and fraudulent

representations and promises were made via mails, e-mails, UPS,

telephone and/or wires for purpose of the execution of their scheme.

38.   After being apprized of the illegal activities by Plaintiffs, these persons

made little, if any, effort to investigate, report or remedy the illegal

activities, although they are legally obligated by statute and fiduciary duty

to do so.

### A.   Paul Costa, The Spencer Group International (TSGI), Jack Ferm and LOJF's Fraudulent Investment Scheme against Angel Fire Water Company, LLC and David Bagley and Romona Bagley

39.   David Bagley and AFW were attempting to expand their business

operations and increase it's production capacity.   Bagley and AFW

estimated that it would cost approximately $3,700,000.00 to complete the

13

planned expansion.

40.   Bagley and AFW, to complete the expansion, borrowed $3,711,228.84 from
      the Amarillo National Bank of Texas.   David Bagley started to draw down
      on the letter of credit in January 2005.

41.   David Bagley, as the general partner of Angel Fire Water Co., LLC (David),
      met Paul Costa, alleged owner of the Spencer Group International ( a
      company represented by Paul Costa as his company which specialized in
      raising capital through investments and through his contacts with investors)
      through Laura Londir.

42.   When Costa was made aware of Bagley and AFW's intent to expand, and
      was further made aware of the $3,711,228.84 loan made by Bagley and
      AFW from the Amarillo National Bank of Texas, Costa fraudulently
      represented to Bagley that he and his company, The Spencer Group
      International, along with Jack Ferm and LOJF, could invest the
      $3,700,000.00 and earn 40% interest per annum,  and that Angel Fire
      Water, LLC,  could use the interest on investments  to expand the
      operations while keeping the principle intact.

43.   It as untrue that Costa, TSGI, Ferm and LOJF had the expertise,
      experience, track record and know-how to accomplish these ends, and it is
      untrue that defendants ever intended to raise money, however, based on
      these fraudulent misrepresentations, Bagley and AFW signed for and
      withdrew, via installments of $300,000.00 beginning on May 25, 2005,
      $2,650,000.00 which was turned over to the Association in Fact, as per the

14

fraudulently induced agreement and contract with TSGI (via U. S. Mail), for the purpose of investing at 40% per annum. Costa provided a promissory note upon execution of the agreement.

44.     The Association in Fact and the individual defendants carried out the fraudulent plan over a three and one-half (3 ½) year period through which defendants stole, through the fraudulent scheme, $2,650,000.00 from David Bagley and Angel Fire Water Co., LLC.

45.     In the first step of defendant's scheme, they fraudulently induced David Bagley to obtain a line of credit with Amarillo National Bank of Texas (Amarillo) amounting to $4,155,000.

46.     Also under the terms of the fraudulently induced contract with Paul Costa and The Spencer Group International, David Bagley provided Paul Costa $15,000 in order to solicit investors for support of Angel Fire Water Co., LLC. Investors that Costa fraudulently represented were available to him and about whom he fraudulently represented raising capital for in the past.

47.     Between January 19, 2005 and April 20, 2005, under the terms of the fraudulently induced contract and in accordance with further fraudulent representations made by Paul Costa, David Bagley provided Paul Costa with $40,833.50 for assistance in fund raising.

48.     In February 2005 David Bagley drew $650,000 from the Amarillo letter of credit.

49.     On May 25, 2005 David sent via wire transfer to Paul Costa $300,000 to invest in a hedge fund in order to offset the interest cost of the funds drawn

on the letter of credit.

50.   Paul Costa would always provide a Promissory Note for the Amount which
      he never intended to honor.

51.   The agreement was that the Association in Fact, i.e., Paul Costa and TSGI,
      would invest the Angel Fire Water monies along with his money in this
      hedge fund and receive 40% interest.  The Association in Fact would return
      the interest on a monthly basis and keep the principal in the hedge fund.

52.   The first alleged "interest payment" of $10,000 was received on June 20,
      2005 and another on June 20, 2005, which was, in fact, plaintiffs' own
      money.

53.   On July 26, 2005 David Bagley provided another $300,000 to the
      Association in Fact, Paul Costa,  for investment in the non-existent hedge
      fund after phone confirmation from Jack Ferm that the hedge fund was real
      and Costa had his own money in said hedge fund.

54.   Payments continued as a result of defendants' continuing scheme, with
      fraudulent record keeping and continuing misrepresentations by defendants
      regarding funds transferred and interest payments, expense costs and
      investment funds.  The last "interest payment" was for $73,000 on July 12,
      2006.

55.   The series of transfers to Paul Costa and the Association in Fact totaled
      $2,650,000.  Paul Costa and the Association in Fact returned "interest"
      payments amounting to $555,214.76, which were not "interest" payments,
      but plaintiffs' own money.

16

56.   In April 2006 Paul Costa did not pay an interest payment, his reasoning was that he was transferring funds to another fund and that we would receive no interest for that month.

57.   In July 2006 David Bagley was considering going public with Angel Fire Water Co., LLC.  In the course of this process AFW staff brought up the need for a multi year audit to met SEC standards.

58.   The investment in which the Association in Fact/Paul Costa has custody ($2,650,000.00) had to be verified for the audit.   That is, there must be a third party confirmation of the investment balance.

59.   The Association in Fact/Costa/TSGI/Ferm and LOJF should have been able to readily produce the necessary documentation of the investments and investment accounts, and "hedge" fund.

60.   However, Costa said that "we will work on that", as "we need to" and had no means to independently support the investment asset.  Costa said that he invested in this hedge fund under his name and that the funds were commingled, and that there would be no way to verify the investment without withdrawing the funds.

61.   The first indication of an issue with the transfer of funds from Paul Costa's The Spencer Group was that the August interest payment of $73,000 was not paid. This amount is usually due the 12th of each month.

62.   On August 9th, 2006,  Angel Fire Water had scheduled a closing meeting on the purchase of the new plant site on August 15, 2006.    David Bagley requested that Paul Costa transfer $300,000 of the $2,650,000 in his

17

custody to cover the cost of the down payment and some additional operational working capital.

63.    On August 15, 2006 – David Bagley went to the closing and did not have the required down payment for the new plant site. Through a variety of tense negotiations an understanding was made that Angel Fire Water Co., LLC, would provide to the Seller of the new plant site property another $12,000 in order to keep the deal open until August 25th.

64.    On August 16, 2006, at 2:37 PM, Brian MacLeod of Angel Fire Water left a message for Paul Costa concerning the transfer of money to cover the closing of the new plant site and to meet operational working capital needs.

65.    On August 17, 2006, Brian MacLeod left Paul Costa two voice mails concerning the transfer of the $373,000 into the First National Bank of New Mexico, stating that Angel Fire had bills to pay including a bottle purchase of $32,617.00 due on August 18, 2006.   That Angel Fire Water needed to notify the manufacture concerning whether Angel Fire will pay 50% before production begins.    Sharon Pokolm of Westbridge PET Containers informed Angel Fire Water that 50% of the total production of the bottle run had to be received by no later than August 18, 2006 or there would be a 25% increase in the cost of bottles.

66.    On August 18, 2006, there was a telephone conservation with Paul Costa and Brian MacLeod.   Paul Costa assured Brian that the $373,000 would be transferred into the Angel Fire Water Co., LLC, First National Bank of New Mexico account by Monday the 21st or no later than Tuesday the 22nd.

Paul Costa claimed that he needed time to complete his "Balances" report.

67.     On August 18, 2006, Shane Atkinson of Angel Fire Water sales informed
        Sharon Pokolm of Westbridge that Angel Fire did not have the funds
        required for them to initiate production of the Angel Fire Water bottles.
        Ms. Pokolm indicated that she could postpone production for a few days by
        inserting another run before Angel Fire's and asked that AFW keep in touch
        concerning their financial situation.

68.     On August 21, 2006, at 10:00 AM, Brian MacLeod left Paul Costa a
        voicemail asking about the wire transfer of $373,000 to be deposited into
        the Angel Fire Water account on Monday or Tuesday.

69.     On August 21, 2006, Brian MacLeod talked with Paul Costa on the cell
        phone.   Paul Costa fraudulently indicated that he was not finished with
        writing up his "Balances" report and would provide Angel Fire Water a copy
        of the report through either FAX or email.

70.     On August 22, 2006, Brian MacLeod called Kevin Mutz, the president of
        International Bank, to say that Angel Fire Water had to cancel the meeting
        and needed to reschedule for Friday at 1:30 PM.

71.     On August 22, 2006, Sharon Pokolm of Westbridge PET Containers called
        to inquire as to the status of the funding for the Angel Fire Water bottle run.
         Shane Atkinson informed Sharon Pokolm that AFW did not have any
        information on when AFW would be receiving the funds for the production
        run. Sharon Pokolm indicated that she wanted an update on August 25,
        2006.

19

72.    On August 23, 2006, the closing meeting at International Bank, who is
       providing 70% of the funds necessary for the purchase of the new plant
       site,  was canceled due to the fact that Angel Fire Water Co., LLC, did not
       have the necessary funds for the down payment. The closing meeting was
       rescheduled for Friday at 1:30 PM.

73.    On August 23, 2006, Paul Costa called Brian MacLeod's cell phone at
       10:01 AM and indicated that he wanted to talk, however he was on his way
       to San Francisco for a meeting from 12:00 to 4:00 PM and would be back in
       his hotel room by 5:00 PM and would call either Brian MacLeod's cell
       phone or the Angel Fire Water business line at 6:00 PM New Mexico time.
       Paul Costa did not call.

74.    On August 24, 2006,  Brian MacLeod  left Paul Costa a voice mail
       indicating that he (Costa) did not call as Costa had indicated at 6:00 PM
       New Mexico time Wednesday evening and that AFW was concerned about
       the status of the transfer of the $373,000.

75.    On August 24, 2006,  David Bagley briefed Kevin Murray on the possibility
       of not being able to provide funds for the closing of the new plant at 1:30
       PM Friday.

76.    On August 24, 2006,  Paul Costa called and said that he is leaving San
       Francisco and will talk with David Bagley "tomorrow morning".

77.    On August 25, 2006,  Paul Costa called Brian MacLeod on his cell phone.
       Paul Costa informed Brian and AFW that there would be no wire transfer of
       any monies.  Paul Costa claimed that he was going to contact a lawyer and

set up an escrow account to return the funds to Amarillo Bank.  Paul Costa
claimed that he "was done" and any "future contact will be through
lawyers".

78.   On August 29, 2006, at 10:00AM Angel Fire, through Brian MacLeod, sent
Paul Costa a FAX requesting the remaining funds that Paul Costa has in
his custody that belong to Angel Fire Water Co., LLC.

79.   On August 29, 2006, Angel Fire sent Paul Costa a registered letter with the
same request the August 29, 2006, fax.

80.   On August 29, 2006, Angel Fire sent Paul Costa an email to his email
account with the same attachment requesting all funds in his custody.

81.   On August 31, 2006,   Angel Fire Sent a third request of funds to Paul
Costa via UPS Next Day Air, fax and email.

82.   Said funds have never been returned and, upon information and belief,
were never intended to be returned by the Association in Fact or
defendants, was never used in "investments", and all funds used for
alleged fund raising were never used for same.

83.   Upon information and belief, petitioners now believe there never was a
"hedge fund" or investment by Paul Costa, d/b/a, The Spencer Group
International, or the Association in Fact.   All money paid as "interest"
payments were plaintiffs' own funds.

**B.     Paul Costa, The Spencer Group International, attorney Jack Ferm, the LOJF, the Association in Fact and the list of non-existent or fraudulent investors**

84.    Paul Costa introduced attorney Jack Ferm to David Bagley at approximately the same time that Costa introduced himself to Bagley.

85.    In the beginning, Jack Ferm agreed to provide "services" without pay unless he and Costa/TSGI (the Association in Fact) were successful in raising funds for Angel Fire Water.

86.    Attorney Jack Ferm has not provided any services toward raising capital for Angel Fire.  However, Jack Ferm has demand funds for non-existent and fraudulent "services" via telephone and wire, and threatened Angel Fire and Bagley if his demands are not met.

87.    Costa, TSHI, Jack Ferm individually and as the Law Firm of Jack Ferm represented to Angel Fire Water Co., LLC, and David Bagley that they had a list of 1500 investors for whom they raised capital in the past, and who would be willing to invest in Angel Fire Water Co., LLC.  This claim was totally false.

88.    Paul Costa set up a phone room in California with the help of Jack Ferm to allegedly call Costa's 1500 plus people with whom he claimed he had done business with in the past, and see if they would be interested in investing in Angel Fire Water Co., LLC.

89.    Based upon these representations, Angel Fire/Bagley  sent Costa/TSGI

22

money on a monthly basis to help  facilitate this effort of contacting people Costa said he knew as detailed above.

90.   When Bagley went out to California to check out the process and the success Costa said he was having talking to his old contacts, Bagley  found a disorganized office with people sitting around doing nothing.

91.   Subsequently, Angel Fire/Bagley discovered that Costa/TSGI did not really have any confirmed investors,  and that he had gone through "his" list of people and was unsuccessful.   Angel Fire/Bagley also discovered that Costa/TSGI purchased a cold calling list of people which he was using, rather than a list of investors for whom Costa allegedly did business in the past.

92.   Bagley told Costa to close the place down on the spot, which he did.

93.   Other than the cost of the people hired to call on his non-existent "clients", Costa/TSGI/Ferm/LOJF always represented that they would be paid only if successful in securing the funding for Angel Fire Water.

94.   Costa also represented that he "hired" Jack Ferm under the same understanding.  However,  Jack Ferm knew at all times that Costa never had a list of investors, that neither of them ever intended to invest or create a "hedge fund", and that Costa never intended, and never did, place any of his own funds into an investment account as he represented he would.

95.    At first all communication to Jack Ferm was accomplished through Paul Costa.   Gradually, Jack Ferm was allegedly given "permission" by Costa to talk to Bagley/Angel Fire  without Costa acting as the middle man.   Ferm

23

made contacts in furtherance of the fraudulent scheme via telephone, U. S. Mail, e-mail and other means in interstate commerce.

96. At one point, and without Costa's knowledge, Jack Ferm asked Angel Fire/Bagley for a full time job with a salary over one hundred thousand per year as legal council for Angel Fire Water. Bagley was really taken back by this request and responded by saying that if he and Costa were successful in raising capital, as they represented they would, then the parties would talk about it later.

97. Jack Ferm's next contact with Angel Fire was on or about July 26, 2006, when Jack Ferm blew up over the phone at Brian MacLeod and accused Bagley of trying to cheat him out of "his" money. There is not and never was any money owed to Jack Ferm/LOJF or Paul Costa/TSGI, and these attempts by Ferm/LOJF and/or Costa/TSGI to collect money from Angel Fire or Bagley is fraudulent and part of the Association in Fact's ongoing scheme.

98. Paul Costa, The Spencer Group International, Attorney Jack Ferm and the LOJF conspired with each other and others to fraudulently represent to Angel Fire Water Company, LLC, and David and Ramona Bagley that they were in the business of raising capital for investment in projects. This representation was false and designed to steal funds from plaintiffs, which they did.

99. There never was an investment fund, never was a hedge fund, never was a list of previously worked for investors, were no interest payments and the

24

funds sent to Angel Fire Water Company, LLC as "dividends" was, in fact,

Angel Fire Water Co.'s own money, of which they still have illegal

possession and control and have refused to return upon numerous written

and verbal demands.

## C.   RICO CASE STATEMENT AND ALLEGATIONS

**1.      State whether the alleged unlawful conduct is in violation of 18 U.S.C. Sections 1962(a), (b), (c), and/or (d).  If you allege violations of more than one Section 1962 subsections, treat each as a separate RICO claim.**

The alleged conduct is a violation of 18 U.S.C. Sections 1962(a), (b), (c), and (d).

**1962(a):**

*"Using or investing the proceeds of any income derived from a pattern of racketeering or the collection of an unlawful debt, in which that person participated as a principal, to establish, operate or acquire any interest in any enterprise engaged in or affecting interstate commerce."*

**1962(b):**

*"acquiring an interest in or control of an enterprise through a pattern of racketeering activity or through the collection of unlawful debt."*

**1962(c):**

*"conducting the affairs of an enterprise through a pattern of racketeering activity or through collection of an unlawful debt."*

**1962(d):**

*"unlawful for any person to conspire to violate Sections 1962(a), 1962(b), and 1962(c)."*

**2.      List _each_ defendant and state the alleged misconduct and basis**

25

*of liability of each defendant.*

a.   **Defendants PAUL COSTA AND TSGI**

**18 U.S.C. § 1962(a):** has received income, directly and indirectly, through the pattern of racketeering activity and has used that income or its proceeds in the operation of an enterprise engaged in, or the activities of which affect interstate commerce, specifically, the "Association in Fact" enterprise comprised of during the life of the conspiracy, and TSGI. To the extent that income derived from the scheme was used to purchase an interest in TSGI, Costa and TSGI have violated section 1962(a) by investing in TSGI and the Association in Fact (enterprises). They were vested in the Association in Fact.

**18 U.S.C. § 1962(b):** because they have, through a pattern of racketeering activity, acquired and maintained, directly or indirectly, an interest in the Association in Fact, and in  (as described above) which were, at all pertinent times, all enterprises engaged in, or the activities of which affected, interstate commerce.

**18 U.S.C. § 1962(c):** they were "managers" in the Association-in-Fact described above, agents for  and in a joint enterprise (i.e., the pattern and scheme of fraud) with the Association in Fact. They were therefore employed by or associated with each of the three enterprises (the Association in Fact, ), all of which were enterprises engaged in, or the activities of which affect, interstate commerce and they have, directly or indirectly, conducted or participated in the conduct of each enterprises' affairs through a pattern of racketeering activity.

**18 U.S.C. § 1962(d):** solicited the client/victims, gave the fraudulent presentation regarding investors, investments and hedge funds and other false statements and representations, acquired the signatures and helped collect the loan proceeds. All parties collected income, all parties used that income to continue their businesses, all businesses affect interstate commerce.

Costa and TSGI, as members of and associated with an Association in

Fact, violated the provisions of 18 U.S.C. §§ 1962(a), (b), (c), and (d). Defendants used the U. S. Mail, telephone and other forms of communication to carry out their schemes.

### b.   Defendants Jack Ferm and the LOJF

**18 U.S.C. § 1962(a):**  has received income, directly and indirectly, through the pattern of racketeering activity and has used that income or its proceeds in the operation of an enterprise engaged in, or the activities of which affect interstate commerce, specifically, the "Association in Fact" enterprise comprised of during the life of the conspiracy, and TSGI.  To the extent that income derived from the scheme was used to purchase an interest in TSGI, Ferm and the Ferm Law Office have violated section 1962(a) by investing in TSGI and the Association in Fact (enterprises).  They were vested in the Association in Fact.

> **18 U.S.C. § 1962(b):**  because they have, through a pattern of racketeering activity, acquired and maintained, directly or indirectly, an interest in the Association in Fact, and in  (as described above) which were, at all pertinent times, all enterprises engaged in, or the activities of which affected, interstate commerce.

> **18 U.S.C. § 1962(c):** they were "managers" in the Association-in-Fact described above, agents for  and in a joint enterprise (i.e., the pattern and scheme of fraud) with the Association in Fact.  They were therefore employed by or associated with each of the three enterprises (the Association in Fact, ), all of which were enterprises engaged in, or the activities of which affect, interstate commerce and they have, directly or indirectly, conducted or participated in the conduct of each enterprises' affairs through a pattern of racketeering activity.

> **18 U.S.C. § 1962(d):**  solicited the client/victims, gave the fraudulent presentation regarding investors, investments and hedge funds and other false statements and representations, acquired the signatures and helped collect the loan proceeds. All parties collected income, all parties used that income to continue their businesses, all businesses affect interstate commerce.

27

Jack Ferm and the LOJF, as members of and associated with the Association in Fact, violated the provisions of 18 U.S.C. §§ 1962(a), (b), (c), and (d). Defendants used the U. S. Mail, telephone, e-mail, UPS and other forms of communication to carry out their schemes.

c.   **Defendants John and Jane Doe, managers, agents and officers of TSGI and the Ferm Law Office:**

**18 U.S.C. § 1962(a):** John and Jane Doe, managers, agents, officers and employees of have received income, directly and indirectly, through the pattern of racketeering activity and have used that income or its proceeds in the operation of an enterprise engaged in, or the activities of which affect interstate commerce, specifically, the "Association in Fact" enterprise comprised of, during the life of the conspiracy, John and Jane Doe, Costa, Ferm, TSGI and the Ferm Law Office. To the extent that John and Jane Doe, managers, agents, officers and employees, purchased stock in as part of an employee plan, or used income derived from the scheme to purchase an interest in legitimate enterprises of the Association in Fact, they have violated section 1962(a) by investing in enterprises engaged in interstate commerce.

**18 U.S.C. § 1962(b):** because they have, through a pattern of racketeering activity acquired and maintained, directly or indirectly, an interest in the Association In Fact, and in TSGI And the Ferm Law Office (as described above) which were, at all pertinent times, all enterprises engaged in, or the activities of which affected, interstate commerce.

**18 U.S.C. § 1962(c):** John and Jane Doe, managers, agents, officers and employees of were "managers" in the Association-in-Fact described above, were employees, agents, officers, managers, etc., for and in a joint enterprise with the Association, (i.e., the pattern and scheme of fraud). They were therefore employed by or associated with each of the three enterprises (the Association in Fact, ), all of which were enterprises engaged in, or the activities of which affect, interstate commerce and they have, directly or indirectly, conducted or participated in the conduct of each enterprises' affairs through a pattern of racketeering activity.

**18 U.S.C. § 1962(d):** solicited the client/victims, maintained the fraudulent misrepresentation regarding investments and dividends and other false statements and representations, acquired the signatures and helped collect the funds. All parties collected income,

all parties used that income to continue their businesses, all
business affect interstate commerce.

John and Jane Doe, managers, agents, officers and employees of , as a
member of and associated with an Association in Fact, Costa/TSGI, Jack
Ferm/LOJF, violated the provisions of 18 U.S.C. §§ 1962(a), (b), (c) and (d).
These violations have occurred in connection with the sale of bogus financial
services with the use of fraud, deception, and false statements regarding the
terms and conditions and their ability to produce promised results. Defendants
used the U. S. Mail, telephone and other forms of communication to carry out
their schemes.

All parties collected income, all parties used that income to continue their
businesses, all business affect interstate commerce.   Defendants used the U. S.
Mail, telephone and other forms of communication to carry out their schemes.

3.     **List the alleged wrongdoers, other than the defendants listed above,
       and state the alleged misconduct of each wrongdoer.**

Alleged wrongdoers, in addition to Defendants, are their employees,
agents, attorneys and representatives who have received notice of the
fraudulent practice employed by defendants to sell the insurance policies,
and who did nothing to protect the plaintiffs or stop the wrongdoing, or halt
the flow of income received from these acts. The identities of all of these
alleged wrongdoers are not known at this time and more names will be
ascertained through the discovery process.

Upon information and belief, these employees, agents, attorneys,
management and representatives received written and verbal
complaints about the fraudulent practices used by , had a duty to halt
said practice, and, to plaintiffs' detriment, refused to halt said
practice and continued to collect income, directly or indirectly,
through the execution of these schemes. All correspondence in the
execution of these schemes were sent via the U. S. Mail.

4.     **List the alleged victims and state how each victim allegedly was
       injured.**

David Bagley and Angel Fire Water Company, LLC were injured by
loss of the $2,650,000.00 dollars entrusted to defendants to make
investments, create a "hedge" fund, and solicit investors for the Angel Fire
Water project.  They were further injured by an inability to pay necessary
fees and an inability to close on property to be used for production plants,
as well as an inability to purchase inventory for the production of their

product.

Pursuant to 18 U.S.C. §1964(c), Plaintiffs are entitled to threefold the amount of actual damages suffered by them due to the actions of the Paul Costa, TSGI, Jack Ferm, and the Ferm Law Office and their co-conspirators:

(1)   The expense associated with the loan.

(2)   The monetary loss associated with the inability to purchase production plants and inventory and loss of credibility and ability to do business with other supply vendors;

(3)   Additional expenses incurred in the conduct of business without the funds stolen by defendants;

(4)   Legal expense (attorney's fees, costs) (under state and federal law)

(5)   Loss of investment caused by defendants' fraudulent misrepresentations

(6)   Loss of business, goodwill and reputation;

(7)   Emotional, psychological, mental anguish and stress and with physical manifestations

(8)   Specific performance in all respects as per defendants' misrepresentations including, but not limited to, the loss of down payment on land Angel Fire Water Co. intended to purchase

(9)   Loss of principal ($2,650,000.00), interest, use of funds, and treble damages;

(10)  All other legal, equitable, compensatory, nominal, punitive damages

5.   **Describe in detail the pattern of racketeering activity or collection of an unlawful debt alleged for each RICO claim. A description of the pattern of racketeering activity shall include the following information:**

   a.   **List the alleged predicate acts and the specific statutes allegedly violated;**

   b.   **Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding each**

30

predicate act;

c.    If the RICO claim is based upon the predicated offenses of wire
      fraud, mail fraud, fraud in the sale of securities, or fraud in
      connection with a case under U.S.C. Title 11, the "circumstances
      constituting fraud or mistake shall be stated with particularity,"
      Fed. R. Civ. P. 9(b). Identify the time, place and contents of
      persons to whom and by whom the alleged misrepresentations
      or omissions were made;

d.    Describe whether the alleged predicate acts relate to the
      enterprise as part of a common plan. If so, describe in detail.

## Pattern of Racketeering Activity

See "Defendants' Scheme" detailed above.

6.    Describe in detail the alleged enterprise for each RICO claim. A
      description of the enterprise and include the following information:

      a.    State the names of the individuals, partnerships, corporations,
            associations or other entities allegedly constituting the
            enterprise;

            1.    Costa/TSGI as an "Enterprise":   All parties agreed, tacitly or
                  expressly, to participate in the scheme, acquire profit from the
                  scheme, and used this profit from the scheme to run (
                  (a) operate, acquire interest in, (b) acquire an interest in or
                  control through the pattern of activity, (c) conduct the affairs of
                  through the pattern of activity) TSGI (the enterprise).

            2.    Association in Fact:  The association in fact consists of Costa,
                  TSGI, Jack Ferm, the Ferm Law Office and, at different times
                  and the managers, officers and agents of each. Defendants
                  are alleged financial services companies and an attorney and
                  law office  providing financial services nationwide. Defendants
                  TSGI and the Ferm Law Office and unknown  managers,
                  agents and officers were aware of the fraudulent scheme used
                  by Costa and Ferm sell the bogus financial services in
                  question. All parties agreed, tacitly or expressly, to participate
                  in the scheme, acquire profit from the scheme.  The
                  association in fact's purpose was to execute the scheme and
                  use those funds to pay the association and its participants in
                  the form of salaries, bonuses, investment capital, operating

revenue, profit, etc.

**b.    Describe the structure, purpose, roles, function and course of conduct of the enterprise;**

See "Defendants' Scheme" detailed above.

**c.    State whether any defendants are employees, officers or directors of the alleged enterprise.**

1.    Paul Costa is the owner and operator of The Spencer Group International.

2.    Jack Ferm is the owner and operator of the Law Office of Jack Ferm.

**d.    State whether any defendants are associated with the alleged enterprise, and if so, how;**

*See supra, 6.c.*

**e.    State whether you alleged that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise;**

1.    See "Defendants' scheme", above.   Paul Costa is owner and operator of TSGI.

2.    See "Defendants' scheme", above.   Jack Ferm is the owner and operator of the Law Office of Jack Ferm.

**f.    If you allege any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

TSGI and the Law Office of Jack Ferm are perpetrators and enterprises.

The Association in Fact is an active body of participants and an enterprise.

**7.    State whether you allege and describe in detail how the pattern of**

32

**racketeering activity and the enterprise are separate or have merged into one entity.**

See "Defendants' Scheme" above.

8. **Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

See "Defendants' Scheme" above.

9. **Describe what benefit, if any, the alleged enterprise receives from the alleged pattern of racketeering activity.**

See "Defendants' Scheme" above.

10. **Describe the effect of the activities of the enterprise or interstate or foreign commerce.**

All enterprises are conducting business across state lines.

11. **If the complaint alleges a violation of 18 U.S.C. Section 1962(a), provide the following information:**

   a. **State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt;**

   The corporate persons of TSGI and the LAW OFFICE OF JACK FERM and the employees, officers, agents thereof.

   b. **Describe the use or investment of such income.**

   To pay expenses of operation (salaries, bonuses, commissions, overhead, advertising, etc.) of TSGI and the FERM LAW OFFICE and those parties that comprise the Association in Fact.

12. **If the complaint alleges a violation of 18 U.S.C. Section 1962(b), provide the following information:**

   a. **Describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise; and,**

The employees, officers, agents of TSGI and the FERM LAW OFFICE, as participants in the scheme, acquire goodwill promotions, material gain and income from the profits of the scheme.

As to the Association in Fact, participation in the scheme is sharing control of the Association.

**b.  State whether the same entity is both the liable "person" and the "enterprise" under Section 1962(b).**

**13.  If the complaint alleges a violation of 18 U.S.C. Section 1962(c), provide the following information:**

**a.  State who is employed by or associated with the enterprise.**

See "Defendants' Scheme" above.

**b.  State whether the same entity is both the liable "person" and the "enterprise" under Section 1962(c).**

See "Defendants' Scheme" above.

**14.  If the complaint alleges a violation of 18 U.S.C. Section 1962(d), describe in detail the alleged conspiracy;**

See "Defendants' Scheme" above.

**15.  Describe the alleged injury to business or property;**

See damages detailed above.

**16.  Describe the relationship between the alleged injury and violation of the RICO statute.**

The injuries are described in the damages and prayer for relief in the original petition and above.  Loss of money and loss of use of property produce the damages described.

**17.  List the damages sustained by reason of the violation of Section 1962, indicating the amount for which each defendant allegedly is liable.**

See paragraph 4 of this Case Statement.

34

**18.  List all other federal causes of action, if any, and provide the relevant statute numbers.**

None at this time.

**19.  List all pendant state claims, if any.**

See paragraphs below of this petition.

**20.  Provide any additional information you feel would be helpful to the Court in processing your RICO claim.**

None.

## II.  Supplemental State RICO Cause(s) of action

### The New Mexico RICO Act

100.  Defendants' activities amount to theft under the New Mexico Criminal Code and under New Mexico Statute(s).

101.  Theft is a covered offense under the New Mexico Criminal Code.

102.  Defendants are liable for all damages under all codes and statutes under New Mexico law which prohibit racketeering.

## III.  NON-RICO CAUSE OF ACTION

### DECLARATORY JUDGMENT AND UNJUST ENRICHMENT

103.  An actual, justiciable controversy exists between Petitioners on the one hand and the Enterprises on the other.

104.  Petitioners seek an award of costs and reasonable and necessary attorneys' fees as are equitable and just.

### III.  NON-RICO CAUSE OF ACTION

35

## BREACH OF FIDUCIARY DUTY

105. Defendants' actions constitute a breach of their fiduciary duty to Petitioners in every role they have taken with regard to the financial and legal affairs of Petitioners.

## IV. NON-RICO CAUSE OF ACTION

## FRAUD

106. The Enterprises made false and misleading allegations in violation of the laws of the United States and the State of New Mexico as set forth herein.

107. Additionally, the Enterprises made misrepresentations to the Petitioners herein for the purpose of inducing Petitioners to participate in its schemes and to make the Enterprises large sums of money.

108. In order to induce the Petitioners to pay and entrust them with large sums of money, the Enterprises made numerous knowingly false affirmative representations and intentional omissions of material facts to Petitioners as detailed above.

109. The above intentional omissions of material fact and/or affirmative representations made by each Member of each Enterprise and their co-conspirators were false or were likely to be false when made and every defendant knew or should have known these representations to be false when made.

36

110. As a proximate cause of the foregoing, Petitioners have been injured in an actual amount to be proven at trial, and should be awarded damages in accordance with the evidence, plus attorneys' fees and costs.

## V. NON-RICO CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

111. The Enterprises and defendants owed Petitioners duties of care, loyalty and honesty, and a duty to comply with the law and applicable standards of care.

112. During the course of its dealings with Petitioners, the Enterprises made numerous knowingly and negligently false affirmative representations, and intentional or negligently misleading omissions of fact as set forth above.

113. The Enterprises either knew or reasonably should have known their representations, recommendations, advice (both legal and financial), instructions, and opinions to be false.  In addition, the rendering of such representations, recommendations, advice, instructions and opinions, as well as the failure to advise Petitioners of the omissions as set forth herein, was negligent, grossly negligent, and reckless.

114. Petitioners  fully performed their obligations under the law and, where applicable, as directed by the Enterprises and thus did not contribute

to the intentional, negligent, grossly negligent, and/or reckless acts in any way.

115. In reasonable reliance on the Enterprises' false affirmative representations and intentional omissions of material facts regarding the transactions at issue, Petitioners lost enormous sums of money, incurred expenses, costs and damages both personally and financially.

116. But for the Enterprises' failure to meet the applicable standard of care and the intentional and/or negligent misrepresentations and material omissions described herein, Petitioners would not have suffered damages.

117. After discovering the Enterprises' professional malpractice, fraud and misrepresentations, Petitioners incurred and will continue to incur substantial additional costs in the prosecution of this case, and further loss of other financial opportunities.

118. As a proximate cause of the foregoing, Petitioners have been injured in an actual amount to be proven at trial, and should be awarded damages in accordance with the evidence, plus attorneys' fees and costs.

## VI. NON-RICO CAUSE OF ACTION

## BREACH OF CONTRACT

119. Defendants' failure to abide by the terms of their own contract, defendants' refusal to return the sums fraudulently taken, and defendants' attempt to collect unlawful debts constitutes breach of contract.

## VII.  NON-RICO CAUSE OF ACTION
## CIVIL CONSPIRACY

120. As described more fully herein, every member of each Enterprise knowingly acted in concert to market and implement the fraudulent schemes and other transactions.  In doing so, they acted with full knowledge and awareness that the transactions were designed to give the false impression that the defendants were legitimate business entities, people proficient in investments, and that they possessed a list of ready and able investors, all of which was false.

121. The TSGI and Ferm Enterprises, the Association in Fact and their co-conspirators, including but not limited to Paul Costa and Jack Ferm, acted as described herein according to a predetermined and commonly understood and accepted plan of action, all for the purposes of obtaining property and money  from Petitioners.

122. The acts of the Enterprises and their co-conspirators were contrary to numerous provisions of law, as stated herein.

123. There was a meeting of the minds between and among the TSGI and

Ferm enterprises and their co-conspirators and other individuals and entities, both known and unknown, to commit the unlawful acts alleged herein. This conspiracy to commit these unlawful, overt acts, and acts of omission, proximately caused and continues to cause Petitioners damages as set forth herein.

124. As a result of the conduct of the Enterprises and their co-conspirators, Petitioners have suffered injury to their person and property in that Petitioners have paid to the defendants large sums of money under fraudulent pretenses and have been injured in the details set forth above.

## VIII. NON-RICO CAUSE OF ACTION
### UNFAIR TRADE PRACTICES

125. The aforementioned wrongful acts and omissions, and those developed through discovery, constitute a violation of the New Mexico's laws, codes and statutes prohibiting Unfair Trade Practices, Consumer Fraud and providing for consumer protection.

126. New Mexico's Unfair Trade Practices and Consumer Fraud and Protection statutes prohibit unfair or deceptive methods, acts or practices in trade or commerce.

127. The Enterprises have engaged in unfair and deceptive trade practices for the purpose and with the effect of obtaining tremendous amounts

of illegal profits and sums of money.

128.   The Enterprises, upon information and belief, had a business purpose
which was to solicit clients under the guise of using their "expert
investment skills" to raise capital for the clients' business.   This
purpose was unrelated to traditional business practices, as
contemplated by New Mexico's laws, codes and statutes against
Unfair Trade Practices and Consumer Fraud.

129.   As a result of Defendants' violation of the New Mexico's statutes, laws
codes against unfair trade practices and consumer fraud, Petitioners
are entitled to the return of all money, interest on said money, fees
and commissions, costs and attorney's fees and damages that
resulted from defendants' unlawful activity.

## XIII.   NON RICO CAUSE OF ACTION

130.   The aforementioned wrongful acts and omissions, and those developed
through discovery, constitute a violation of criminal and civil statutes, codes
and laws under New Mexico law.

## XIV.  NEGLIGENCE AND GENERAL TORT CLAIMS

131.   The defendants  knew or should have known that their agents,
employees and assigns were committing fraud and making fraudulent
misrepresentations in connection with their services.

132.   The enterprises and individual defendants refused to act, failed to act,

and, in fact, participated in the scheme to profit through fraud.

133. The enterprises, TSGI and the Ferm enterprise, and the individual defendants, therefore failed in their duties to protect Petitioners from the fraudulent scheme.

134. The detailed, factual allegations in the Case Statement and the statement of facts under the RICO claim above provide further information supporting Petitioners' non-RICO claims.

## XV. DAMAGES

135. As a proximate cause of the Enterprises' and their respective members' violations of 18 U.S.C. §§1962(a) - (d), and violations of other state statutes and laws, Petitioners have been injured in their persons and property for the reasons described herein and continue to incur substantial additional costs and expenses to rectify the wrongs perpetrated against them.

136. The Enterprises and their co-conspirators have caused Petitioners to incur severe financial and personal losses.

137. As set forth herein, as a result of the conduct of the Enterprises and their co-conspirators, Petitioners suffered injury to their persons and property in that Petitioners paid to the Enterprises large sums of money, costs, payments and fees and have incurred actual damages and losses in an amount to be proven at trial.

138. Pursuant to 18 U.S.C. §1964(c), Petitioners are entitled to threefold the amount of actual damages suffered by them due to the actions of the Enterprises and their co-conspirators.

139. Petitioners are also entitled to be awarded the costs incurred in this suit, pre-judgment interest, reasonable attorneys' fees and all other damages authorized by law.

## XVI. PRAYER FOR RELIEF

WHEREFORE, Petitioners pray that this suit be filed and served, and, after the proceedings, there be judgment in favor of the petitioners Angel Fire Water Co., LLC, David Bagley and Ramona Bagley, and against defendants PAUL COSTA, THE SPENCER GROUP INTERNATIONAL, JACK FERM and THE LAW OFFICE OF JACK FERM and the as yet to be named managers, agents and employees of each defendant jointly, severally, and in solido, for damages that this Court deems necessary and proper.

Respectfully Submitted:

IN PROPER PERSON

David Bagley, Individually and on Behalf of
Angel Fire Water Company, LLC
28 Fria Court
Angel Fire, New Mexico 87710
(505) 377-2727
(505) 377-1441
info@angelfirewater.com
JMLaw122@cox.net

43